FreemaN, J.,
delivered the opinion of the Court.'
The only questions in this case are the proper mode of ascertaining the value of the life estate of Howell A. Tatum, in a tract of land of 406 acres, sold in 1854, and then, from the proof, what that value is.
The facts are, that by a decree of this Court, the value of the life estate of said Tatum was to be ascertained, to be allowed as a credit in an account *246 which was directed, and the case remanded to Chancery Court at Somerville, for the purpose of taking the account.
The Clerk and Master made his report of the amount due, and the value of the life estate, and allowed said value as a credit.
To this valuation . exceptions were filed by defendants. His Honor Judge Reeves, sitting in the place of the Chancellor, disregarded the exceptions and remanded the case to the Clerk and Master, because, he held, the Clerk had not assumed the proper value of the fee of the land, directing him to ascertain the cash value of the land by taking the sum at which it was bought by Carnes and Perry, . at public sale in 1854, on one and two years credit, and reduce that sum to cash by deducting the interest on the credit, and then calculate the value of the life estate..
To this action of the Court, in fixing the basis of the estimate for value of life estate, complainants excepted.
The assumption of the Court, that the price the land sold for in 1854, was, as a matter of law, its real value, and to be taken as such arbitrarily, was incorrect.
The purchaser may have given more than it was-worth, and he may have got it for less than its true value. It was a matter of evidence, or circumstance, and a very strong one to fix the value of the land at the time of the sale, and to be weighed' in connection with the other testimony in the case: 1 Sneed, 183.
*247 The exceptions filed to report of the Clerk and Master by defendants, are: First, that the amount allowed for value of H. A. Tatum’s life estate was too low, from the proof.
The second is substantially the same, except it refers particularly to the fact, that the Clerk had failed to regard the facts stated by the witnesses, with reference to cost of clearing and fencing the lands, etc., as elements in his conclusions, and had not given proper estimates of the value of the land.
The third exception is, in substance, that the Clerk had disregarded the probable duration of the life estate, and for this reason had fixed it too low.
The fourth is, he had disregarded the admissions of complainant’s bill, as to value of life estate.
These exceptions to first report are, in substance, repeated to the last report, and raise the questions presented for our decision.
The first question then is, the proper mode of fixing the value of a life estate by the Clerk and Master on a reference to him, or by the Court in exceptions to his report.
It is insisted by defendants, that it shall be done by ascertaining the probable duration of the life of the tenant, from certain tables prepared by Professor Carlisle, of England, and others in the United States, in which the expectancy of life of persons at various ages is calculated.
We can not agree that this is, as a matter of law,, the necessary and proper mode of arriving at such value. We do not think the rule, baser! on such cal *248 culations, adapted to tbe circumstances of our country in its details. ■ A Clerk and Master might well use these tables as a basis for. his calculations in connection with proof of the annual rents of the estate, if no other proof was submitted to him. Yet even then, in the present state of our country, where the rental value of land is dependent upon so many contingencies, and liable to so much fluctuation, we could not feel that he had followed a very satisfactory rule.
In England, where the rent-roll of every estate is fixed, and subject to very little variation during the life of one person, the well-settled practice is to estimate the value of the estate, whether it be for life, or a larger estate at so many years’ rent. But this rule, we think, ought not to be applied, at least as yet, in this country, under a very different set of circumstances. The better rule is given by Supreme Court of North Carolina. We cite the principle from syllabus of the case as follows: “In estimating the relative value of a life estate and a remainder or reversion in real property, there is no rule which can be applied — that is, no arbitrary rule based simply on expectancy of life. Every case must depend on its own facts and peculiar circumstances, to be weighed and adjudged on the reference to the clerk. The Court, on .exceptions to clerk’s report, can only look-to the evidence produced before the clerk.”
We think the best rule, at any rate at present, in our State is, that the market value of the life estate' at the time is the value that should be fixed by the Courts on such an inquiry. This market value of *249 tbe life estate is to be ascertained from proof on the same principle precisely as the market ■ value, of the fee should be ascertained when made a subject of inquiry by proof of what it would bring in the currency of the country if put on the market. Money or the currency of the country is the standard of value. The amount of money, then, that the land will purchase, or can be exchanged for in the market, to change the ordinary phraseology in which this idea is expressed, is' its value at the time.
This market value is to be ascertained by testimony of witnesses who know the property and the price at which such lands are usually sold, and are able to form an estimate based on experience and observation, and knowledge of the price of lands in the country, of what it would probably bring in the market.
In case of life estate, the’ same principle should govern, adding the requirement that the witnesses should know the life tenant, his age, habits, and constitution, as well as the land, and then their estimate of the value of such life estate will serve to guide the Court or clerk in fixing the value that should be placed on it. We admit that in the case of a life estate there will be fewer elements of certainty in the evidence thus presented than in the case of fixing the value of the fee; still we think the valuation obtained by this process will be as likely to do justice to the parties — at any rate approximative justice, such as is administered and sought in Courts — as well, if not better, than to follow an arbitrary rule based on annual *250 rents and probable duration of life. In either case, in many instances, exact, abstract, or mathematical justice -will not be reached, but this is not often attainable in the practical administration of the law.
To the last report of Clerk and Master the defendant alone excepted; his exceptions were overruled, and final decree entered confirming the report, and giving-judgment against the defendant for $1,502.75, from which he appealed.
Complainants, the decree says, excepted to this decree, and also appealed. This was unnecessary, as the appeal of the defendant brought the whole case up for trial de novo, and stands here as it did in the Chancery Court under the facts as stated in the record.
On looking into the testimony we find complainants prove by five witnesses that the land was, in their judgment, worth in 1854 only about $2,000, while defendants introduce two witnesses, one of whom says it was worth six or seven dollars per acre, cash, and the other ten dollars.
Six witnesses of complainants concur in the fact, that the life estate in that neighborhood at that time was worth one-fourth the price of the land. Of the two witnesses of defendant — the one says it was worth from two-thirds to three-fourths the value of the land; the other says, from two-thirds to three-fourths the value of the land; but he says, however, it would be a gambling speculation, and the price would depend, on a sale, upon the nerve of the party purchasing and taking the risks.
We think as a matter of evidence in this case, *251 the fact of. the price at which the land sold in the market in 1854, was one entitled to as much or more weight in ascertaining the market value, than the statement of the witnesses, dependant largely on their memory as to its value, fifteen years before they make their estimates, especially in view of the great changes and disturbance of values produced by the war, to embarrass and confuse their recollections.
Upon looking into all the evidence both of complainants and defendants as to the value of the land in 1854, in connection with the fact of the price' at which it did sell to the complainants at public sale at that time, that the price then given when, reduced to cash, by deducting the interest, the legal value of money for the time of credit given, is the most reliable estimate that can be made of the true value of the land at the time.
In this view of the case, upon carefully weighing of all the testimony, we think the Clerk and Master’s report is correct, or about as nearly so as can be expected in such a case. "While we adopt this as the fair result of the evidence, we do so not arbitrarily on the grounds assumed by the Chancellor, but simply as the result of the testimony taken altogether.
It is insisted, that the statement in the original bill, that the life estate was not worth more than $1,150, estops the party making it from showing the value to be less. We do not think this assumption correct. The allegation is not made as an ascertained and precise fact, does not pretend to be an accurate valuation of the life estate, but only a statement that *252 it was not worth more than this sum. This is not such an allegation in pleading as will create an estoppel.
Decree of Chancellor affirmed. Defendant Polk pay costs of this Court, and the costs below incident to this account be divided.